IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 15-157 |
| v. | : | DATE FILED: _____ |
| MITESH PATEL<br>ANTHONY VETRI<br>MICHAEL VANDERGRIFT | : | VIOLATIONS:<br>21 U.S.C. § 846 (conspiracy to |
| | : | distribute oxycodone – 1 count)<br>18 U.S.C. § 1956 (money |
| | : | laundering conspiracy – 1 count)<br>26 U.S.C. § 7206(1) (filing a false tax |
| | : | return - 3 counts)<br>18 U.S.C. § 924(j)(1) (murder in the |
| | : | course of using and carrying a firearm –<br>1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting)<br>Notices of forfeiture |

SECOND SUPERSEDING INDICTMENT

COUNT ONE

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

1.      Under the Controlled Substances Act (CSA), the United States Drug Enforcement Administration (DEA) regulated certain pharmaceutical drugs that are classified as controlled substances because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. Controlled substances were classified in five schedules; Schedule II consists of drugs and other substances that have a high potential for abuse which may lead to severe psychological or physical dependence.

2.      Controlled substances could only be lawfully distributed to individuals with a valid prescription issued by a physician or other authorized health practitioner, except

when dispensed directly to a patient by the practitioner other than a pharmacist. 21 U.S.C. § 829(c).

3.      Title 21, United States Code, Section 821, provided that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations ... relating to the registration and control of the manufacture, distribution and dispensing of controlled substances." All functions vested in the Attorney General by the CSA were delegated to the Administrator of the Drug Enforcement Administration (DEA). 28 C.F.R. § 0.100(b). The exercise of this rulemaking authority resulted in Section 1306.04 of Title 21 of the Code of Federal Regulations, which governed the issuance of prescriptions for controlled substances and stated that every prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rested with the pharmacist who filled the prescription." A prescription not meeting this standard is invalid. Anyone who knowingly issued or filled an invalid prescription is "subject to the penalties provided for violations of the law relating to controlled substances." 21 C.F.R. § 1306.04.

4.      Every pharmacy that distributed or dispensed any controlled substance also had to obtain a DEA Registration. 21 U.S.C. § 822(a). This DEA Registration also had to be renewed every one to three years. 21 U.S.C. § 822(a). Prerequisites for a pharmacy to obtain a DEA Registration included a valid state pharmacy license and a state controlled substance license, where applicable. 21 U.S.C. § 822(a). A separate registration was required "at each principal place of business or professional practice where the [pharmacy] ... dispense[d] controlled substances." 21 U.S.C. § 822(a).

2

5.     Except in emergency situations that are governed by different requirements, a pharmacist could only dispense Schedule II controlled substances pursuant to a valid written prescription signed by a practitioner or a facsimile of a valid written signed prescription transmitted by the practitioner or the practitioner's agent to the pharmacy.  21 C.F.R. § 1306.11(a).

6.     Oxycodone was the generic name for an addictive prescription painkiller, the abuse of which could lead to severe psychological or physical dependence, and was sometimes combined with non-narcotic pain relievers such as acetaminophen.

7.     Oxycodone was sold generically and under a variety of brand names, including Oxycodone Hydrochloride (Hcl), OxyContin, Percocet, and Endocet (combined with acetaminophen).  Oxycodone also was sold in various dosages, including but not limited to 5mg, 10mg, 30mg, and 80mg.  When legally prescribed for a legitimate medical purpose, oxycodone was typically used to combat moderate to severe pain.

8.     All of the products containing Oxycodone were classified by the Drug Enforcement Administration as Schedule II controlled substances, which meant that they could not safely be used except under the supervision of a licensed medical practitioner.  21 U.S.C. § 353(b)(1)(A).

9.     From on or about September 15, 2005, throughout all times relevant to this indictment, defendant MITESH PATEL was a pharmacist licensed in the Commonwealth of Pennsylvania.  Pursuant to his pharmacy licenses, throughout all times relevant to this indictment, defendant MITESH PATEL was permitted to order, possess, and dispense controlled substances in relation to validly issued medical prescriptions.

3

10.     From in or about 2008, through on or about June 4, 2013, in the Eastern

District of Pennsylvania, defendants

### MITESH PATEL,
### ANTHONY VETRI, and
### MICHAEL VANDERGRIFT

conspired and agreed with Gbolahan Olabode, a/k/a "Bo" (deceased), and Person #1 known to

the grand jury, and others known and unknown to the grand jury to knowingly and intentionally

distribute, dispense and possess with intent to distribute and dispense Oxycodone, a Schedule II

controlled substance, without valid prescriptions, in violation of Title 21, United States Code,

Section 841(a)(1), (b)(1)(C).

### MANNER AND MEANS

It was part of the conspiracy that:

11.     From approximately in or around August 2007, through in or around

August 2008, defendant MITESH PATEL was employed as a pharmacist at Rios Pharmacy.

While employed at Rios Pharmacy defendant PATEL did knowingly and intentionally distribute

and dispense Oxycodone, a Schedule II controlled substance, without valid prescriptions.

12.     Defendant MITESH PATEL was a pharmacist licensed in the

Commonwealth of Pennsylvania who, beginning in 2009 and continuing until June 4, 2013,

owned and operated three pharmacies – Dava Pharmacy (operated, and registered with the DEA,

from on or about February 6, 2009, through on or about June 4, 2013) , Dava Pharmacy #2

(operated, and registered with the DEA, from in or around September 23, 2010, through on or

about June 4, 2013), and Drexel Hill Pharmacy (operated, and registered with the DEA, from in

or around January 15, 2013, through on or about June 4, 2013).

4

13.     From on or about June 17, 2008, throughout all times relevant to this indictment, defendant MITESH PATEL was an owner of MP Capital Partners LLC, doing business as Dava Pharmacy, located at 927 E. Baltimore Avenue, J-K, in Lansdowne, PA.

14.     From in or about September 2009, throughout all times relevant to this indictment, Gbolahan Olabode co-owned Dava Pharmacy with defendant MITESH PATEL.

15.     From on or about June 7, 2010, throughout all times relevant to this indictment, defendant MITESH PATEL and Gbolahan Olabode co-owned Patel Olabode Holdings LLC, doing business as Dava Pharmacy #2, located at 1701 Welsh Road, Suite 4, in Philadelphia, PA.

16.     From on or about August 29, 2011, throughout all times relevant to this indictment, defendant MITESH PATEL and Gbolahan Olabode co-owned Patel Olabode Pharmacy LLC, doing business as Drexel Hill Pharmacy, located at 403 Shadeland Avenue, Drexel Hill, PA.

17.     From on or about September 2, 2009, throughout all times relevant to this indictment, defendant MITESH PATEL owned M&B Pharmaceuticals, Inc.

18.     Defendant MITESH PATEL used his pharmacist license and Dava Pharmacy to order large quantities of Oxycodone pills from pharmaceutical wholesalers so that he could unlawfully supply them to defendant ANTHONY VETRI, Gbolahan Olabode, Person #1 and others known and unknown to the grand jury, for redistribution.

19.     From in or about July 2008, through on or about July 31, 2012, defendants ANTHONY VETRI and MICHAEL VANDERGRIFT sold, without legitimate prescriptions, large quantities of Oxycodone pills provided by defendant MITESH PATEL to customers in the

Eastern District of Pennsylvania, and defendant VETRI provided proceeds from those sales to defendant PATEL.

20.    From in or about September 2009, through on or about January 4, 2012, Gbolahan Olabode sold, without legitimate prescriptions, large quantities of Oxycodone pills provided by defendant MITESH PATEL to customers in the Eastern District of Pennsylvania, and provided proceeds from those sales to defendant PATEL.

21.    From in or about 2008, through in or about May, 2013, Person #1 sold, without legitimate prescriptions, large quantities of Oxycodone pills provided by defendant MITESH PATEL to customers in the Eastern District of Pennsylvania and elsewhere and provided proceeds from those sales to defendant PATEL.

22.    Defendant MITESH PATEL, Gbolahan Olabode, Person #1 and others known and unknown to the grand jury deposited large amounts of currency generated from the unlawful distribution of Oxycodone pills into several bank accounts associated with Dava Pharmacy, Dava Pharmacy #2, Drexel Hill Pharmacy.

23.    Defendant MITESH PATEL and Gbolahan Olabode then wrote checks from the pharmacy bank accounts of Dava Pharmacy, Dava Pharmacy #2, Drexel Hill Pharmacy, to themselves, falsely indicating on business records that the checks were for the return of equity contributions to the pharmacies.  Those checks were then deposited in the personal bank accounts of defendant PATEL and Olabode.

24.    Beginning in or about Fall 2011, defendants ANTHONY VETRI and MICHAEL VANDERGRIFT and others known and unknown to the grand jury agreed to displace Gbolahan Olabode as a recipient of defendant MITESH PATEL's unlawfully diverted

Oxycodone in order to increase the number of Oxycodone pills that defendants VETRI and VANDERGRIFT, and others would receive from defendant PATEL.

25.     Beginning in or about Winter 2011, defendants ANTHONY VETRI and MICHAEL VANDERGRIFT agreed that defendant VANDERGRIFT would intentionally cause the death of Gbolahan Olabode in order to increase the number of Oxycodone pills that defendants VETRI and VANDERGRIFT, and others would receive from defendant PATEL.

26.     On or about January 4, 2012, for the purpose of increasing the number of Oxycodone pills that defendants ANTHONY VETRI and MICHAEL VANDERGRIFT, and others would receive from defendant MITESH PATEL, defendant VANDERGRIFT and Michael Mangold, charged elsewhere, caused the death of Gbolahan Olabode by intentionally shooting Gbolahan Olabode with two firearms multiple times,

All in violation of Title 21, United States Code, Section 846.

7

## COUNT TWO

## THE GRAND JURY FURTHER CHARGES THAT:

      1.     Paragraphs 1 through 9, and 11 through 23, of Count One of this indictment are fully incorporated herein.

      2.     From in or about 2008, through on or about June 3, 2013, in the Eastern District of Pennsylvania, defendant

## MITESH PATEL

knowingly and intentionally conspired and agreed with Gbolahan Olabode, a/k/a "Bo" (deceased), Person #1, and persons known and unknown to the grand jury, to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, the distribution of, and conspiracy to distribute, controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transactions were intended to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

      All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE

### THE GRAND JURY FURTHER CHARGES THAT:

On or about April 15, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

### MITESH PATEL,

a resident of Media, Pennsylvania, willfully made and subscribed a United States income tax

return, Form 1040, for the calendar year 2010, which was verified by a written declaration that it

was made under the penalty of perjury and filed with the Director, Internal Revenue Service

Center, at Philadelphia, Pennsylvania, which defendant MITESH PATEL did not believe to be

true and correct as to every material matter, in that the return reported a taxable income of

negative $21,324.00, when, as defendant MITESH PATEL knew, the defendant had an

unreported taxable income of approximately $267,926.00.

In violation of Title 26, United States Code, Section 7206(1).

9

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 15, 2012, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

### MITESH PATEL,

a resident of Media, Pennsylvania, willfully made and subscribed a United States income tax

return, Form 1040, for the calendar year 2011, which was verified by a written declaration that it

was made under the penalty of perjury and filed with the Director, Internal Revenue Service

Center, at Philadelphia, Pennsylvania, which defendant MITESH PATEL did not believe to be

true and correct as to every material matter, in that the return reported a taxable income of

negative $360.00, when, as defendant MITESH PATEL knew, the defendant had an unreported

taxable income of approximately $315,847.00.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 15, 2013, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

### MITESH PATEL,

a resident of Media, Pennsylvania, willfully made and subscribed a United States income tax

return, Form 1040, for the calendar year 2012, which was verified by a written declaration that it

was made under the penalty of perjury and filed with the Director, Internal Revenue Service

Center, at Philadelphia, Pennsylvania, which defendant MITESH PATEL did not believe to be

true and correct as to every material matter, in that the return reported a taxable income of

$16,088.00, when, as defendant MITESH PATEL knew, the defendant had an unreported taxable

income of approximately $110,260.00.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 4, 2012, in Lansdowne, in the Eastern District of Penn-sylvania, and elsewhere, defendants

### ANTHONY VETRI, and
### MICHAEL VANDERGRIFT

knowingly used, carried, and discharged firearms, and aided and abetted the knowing use, carrying and discharge of firearms, during and in relation to a drug trafficking crime, which may be prosecuted in a Court of the United States, that is, conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, in violation of Title 18, United States Code, Section 924(c)(1), and in the course of this violation caused the death, and aided and abetted the killing, of a person through the use of those firearms, which killing is a murder, as defined in Title 18, United States Code, Section 1111, in that the defendant, with malice aforethought, unlawfully killed and aided and abetted the killing of Gbolahan Olabode, a/k/a "Bo," willfully, deliberately, maliciously, and with premeditation.

In violation of Title 18, United States Code, Sections 924(j)(1) and 2.

12

## NOTICE OF FORFEITURE

## THE GRAND JURY FURTHER CHARGES THAT:

1.     As a result of the violations of Title 21, United States Code, Section 846,

set forth in this indictment, defendants

### MITESH PATEL
### ANTHONY VETRI, and
### MICHAEL VANDERGRIFT

shall forfeit to the United States of America:

a.     any property constituting, or derived from, proceeds obtained,

directly or indirectly, from the commission of such violations, including, but not limited to, the

sum of $2,733,300.00; and

b.     any property used or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, such violations.

2.     If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided
       without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the property subject to

forfeiture.

All pursuant to Title 21, United States Code, Section 853.

13

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Section 1956 set forth in this superseding indictment, defendant

### MITESH PATEL

shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property, including, but not limited to the sum of $1,059,600.97.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

14

All pursuant to Title 18, United States Code, Section 982.

**Grand Jury Foreperson**

**LOUIS D. LAPPEN**
**Acting United States Attorney**

15